UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| ENOCH M. MILLER, )<br>     **Plaintiff,** )<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>COMMISSIONER OF SOCIAL )<br>SECURITY, )<br>     **Defendant.** ) | Case No. 07-2115 |

# REPORT AND RECOMMENDATION

In January 2007, Administrative Law Judge (hereinafter "ALJ") John Wood denied Plaintiff Enoch Miller's application for disability insurance benefits and supplemental security income. The ALJ based his decision on a finding that, although Plaintiff cannot perform his past relevant work, there are jobs available in significant numbers in the national economy that he can perform.

In June 2007, Plaintiff filed a Complaint (#3) against Defendant Michael Astrue, the Commissioner of Social Security, seeking judicial review of the ALJ's decision to deny social security benefits. In April 2007, Plaintiff filed his Answer to Motion for Summary Judgment (#17), which the Court deems to be a motion for summary judgment. In July 2007, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#20). In August 2007, Plaintiff filed an Answer to Defendant's Motion for Summary Affirmance (#22). After reviewing the administrative record and the parties' memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Plaintiff's motion for summary judgment **(#17)** be **GRANTED** and this case remanded for further consideration.

### I. Background
#### A. Procedural Background

Plaintiff filed an application for social security benefits in November 2003, alleging that he became disabled on April 15, 2002. The Social Security Administration (hereinafter "SSA")

denied Plaintiff's application initially and upon reconsideration. Plaintiff timely requested a hearing, which the ALJ held in October 2006. At the hearing, Plaintiff, Robert Galbreath, a rehabilitation counselor for the State of Illinois, and vocational expert James Lanier testified. Plaintiff was not represented by counsel at the hearing. In January 2007, the ALJ denied Plaintiff's application for benefits. In April 2007, the Appeals Council denied Plaintiff's request for review of this decision, making the ALJ's decision the Commissioner's final decision. In June 2007, Plaintiff appealed this decision by filing a complaint in federal court pursuant to 42 U.S.C. § 405(g).

### B. Plaintiff's Background

Plaintiff previously worked as a janitor, laborer, and material handler. His last job as a janitor lasted from 1997 until March 2002. (R. 106.) From March 2003 until at least November 2003, he worked about six hours a day, five days a week, babysitting for two children. (R. 89.)

The ALJ noted that Plaintiff has degenerative disc disease, diabetes, migraine headaches, and hypertension. (R. 16.)

The record contains medical records beginning in 1995 from Dr. William Brunner, Carle Clinic, Provena Covenant Medical Center, Dr. Imhotep Carter (June 2000 to August 2003), Dr. Kaushik Patel (consultative exam dated March 2004), Sandra Bilinsky, a DDS physician (determination statement dated August 2004), Dr. Ming Wang (May 2005 to March 2006 and August 2006 to September 2006), and Dr. Scott Paluska (February 2005 to April 2006, and letter dated October 2006). In addition, the record contains some information received after the hearing, including records from Provena Covenant Medical Center (May 2004 to August 2006, April 2004 to November 2006, discharge instructions from November 2006 to December 2006) and Frances Nelson Health Center (April 2005 to October 2006), and a report from Dr. Paluska (December 2006).

### C.  The Hearing Before the ALJ

The ALJ held a hearing in October 2006, during which Plaintiff, Robert Galbreath, and vocational expert (hereinafter "VE") James Lanier testified.

Plaintiff was forty-five years old at the time of the hearing.  He weighs 230 pounds and stands five feet eleven inches tall.  Plaintiff has completed the eleventh grade and he reads at about a 4.8 (nearly fifth grade) grade level.  (R. 416.)  He worked as a janitor until he injured his back.  His past jobs generally involved physical labor.  At the time of the hearing, Plaintiff had not worked full-time for three years.  (R. 417.)  Plaintiff testified that he cannot work because constant motion irritates his back and he cannot sit for eight hours.  (R. 421.)  He can drive but not for long because it becomes uncomfortable.  (R. 415.)  He testified that he can sit and watch a movie, but he cannot sit for eight hours.  (R. 422.)  He testified that he could probably stand for less than one hour, but if he stands for very long, his legs get numb.  (R. 422-23.)

In a typical day, Plaintiff will get up around 7:00 a.m., help his girlfriend's two children (eight and ten years old) get ready for school, drop the children off at school, and then go to adult education classes, where he is working on his GED.  (R. 424-25.)  His classes last two hours.  In the afternoon, he will lie down for about an hour to an hour and a half and then watch a little TV.  (R. 426.)  After his girlfriend gets home, she might take him to see his son or to the library.  (R. 426.)  In the evening he might watch television, work on his reading, or do other homework.  He does not do housework, grocery shopping, or yard work.  (R. 427.)  He does not go to church and does not have hobbies or do yard work.  (R. 427, 430.)  He sometimes talks to at-risk youth as a community service on an informal basis.  (R. 429.)

Robert Galbreath, a rehabilitation counselor for the State of Illinois, testified at the hearing.  He testified that Plaintiff needs to be retrained in another kind of work because he cannot work as a laborer due to his inability to sit or stand for prolonged periods of time, lift or

carry, or rotate his lower back. (R. 434.) Mr. Galbreath stated that Plaintiff has been cooperating with the Illinois Division of Rehabilitation Services program and has indicated that he is willing to cooperate with the Ticket To Work program if he is awarded social security benefits. (R. 435-36.)

The ALJ then questioned Dr. James Lanier, the VE, about whether a hypothetical individual could perform Plaintiff's past work if the individual were limited to a sedentary exertional level, simple, repetitive tasks, and no climbing of ladders, ropes, or scaffolds, only occasional postural functioning, and a need to avoid unprotected heights and dangerous machinery. The VE testified that the individual could not perform Plaintiff's past work. The ALJ then added the vocational factors of Plaintiff's age, education, and work history. The VE testified that a number of jobs exist in the national or regional economy that the individual could perform, including hand material mover (2,004 jobs), interviewer (1,378 jobs), receptionist/information clerk (4,436 jobs), sedentary messenger (896 jobs), and general office clerk (2,778 jobs).

The ALJ added a significant limitation on postural functioning, "in other words, not over 10 percent of the time on a job." (R. 440.) The VE responded that this limitation would not affect the availability of jobs. In response to the ALJ's question regarding reading ability, the VE testified that the individual would need to be able to read at about the fifth grade level, be able to ask questions and record information, and for some jobs, be able to memorize some amount of information. The VE noted that some of the jobs would be difficult for someone with a 4.8 reading level (which Plaintiff has), including the interviewer, information clerk, and office clerk jobs. The hypothetical individual could still perform the hand material job, however. (R. 442.)

The ALJ then explained to Plaintiff that sedentary work involved being able to lift up to ten pounds, sit for six hours, and stand for two hours.

Finally, Plaintiff told the ALJ that Dr. Patel's examination was very brief. Plaintiff stated as follows: "He had me walk in the office, bend over, said to try to touch your toes, sit on the desk, hit both of my knees and put me out of there. I was in that room for less than three minutes." (R. 453.) The ALJ responded that this examination is not the only thing he will consider.

### D.  The ALJ's Decision

To be entitled to social security disability benefits, a plaintiff must show that he is unable to engage in any substantial gainful activity because of a medically-determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 416(i)(1)(A). The Commissioner utilizes a five-step sequential evaluation to determine disability. At each step, if the ALJ affirmatively finds the claimant disabled or not disabled, the inquiry ends, but if no determination can be made, the Commissioner proceeds to the next step. 20 C.F.R. § 416.920(a)(4). The five steps are as follows: (1) whether the claimant is presently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the Regulations; (4) whether the claimant has the residual functional capacity to perform past relevant work; and (5) if the claimant cannot perform his past relevant work, whether he can do other jobs that are available in the national economy. 20 C.F.R. § 404.1520(a)(4). Between steps three and four, the Commissioner determines the claimant's residual functional capacity, that is, the work he is still able to perform despite limitations. 20 C.F.R. § 404.1545. The claimant bears the burden of production and persuasion at steps one through four. Once the claimant shows he is unable to perform past work, the burden shifts to the Commissioner to show that the claimant is able to engage in some other type of substantial gainful employment. *Campbell v. Shalala*, 988 F.2d 741, 743 (7th Cir. 1993).

Here, the ALJ found that Plaintiff had a severe combination of impairments including degenerative disc disease, diabetes, migraine headaches, and hypertension. The ALJ found that Plaintiff's impairments did not meet or equal one of the listed impairments. Plaintiff does not challenge these findings.

The ALJ next determined that Plaintiff has the residual functional capacity (hereinafter "RFC") to perform sedentary work with the ability to lift up to ten pounds occasionally and sit for up to six hours in an eight-hour day. He is restricted to work involving no climbing of ladders, ropes, or scaffolds, only occasional climbing of ramps or stairs, and only occasional bending, kneeling, stooping, crouching, or crawling. He cannot work around unprotected heights or dangerous machinery and he is restricted to simple repetitive tasks involving work activity at the fifth grade reading level.[1] (R. 17, 19.) Based on this RFC and the VE's testimony, the ALJ determined that Plaintiff was unable to perform his past relevant work but he "would be able to perform the requirements of representative occupations such as Hand Material Mover (2,004 positions in Illinois)." (R. 20.) Therefore, Plaintiff is not disabled as defined by the Social Security Act.

## II.  Standard of Review

An ALJ's decision is subject to review pursuant to 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The United States Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consol. Edison Co. v. New York*, 305 U.S. 197 (1938)). Where conflicting evidence may allow reasonable minds to differ as to whether a claimant is disabled, the responsibility for making that determination rests with the ALJ. *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996). Therefore,

---

[1]With regard to reading ability, the ALJ referred to the third grade level and the fifth grade level. Consistent with the testimony at the hearing and the evidence in the record, the Court assumes that the reference to the third grade level was a typographic error.

the question for review is not whether the claimant is disabled, but whether substantial evidence in the record supports the ALJ's finding of no disability. *Id.* at 977. The Court defers to the ALJ's determinations of credibility, "so long as they find some support in the record." *Edwards v. Sullivan*, 985 F.2d 334, 338 (7th Cir. 1993).

### III.  Discussion

Plaintiff raises three arguments, as follows:  (1) the ALJ failed to obtain a valid waiver of counsel; (2) the ALJ's RFC is inconsistent with the treating physician's opinion and not supported by the medical evidence; and (3) there are insufficient hand material mover jobs available in the region.  In general, Plaintiff states that he has back problems that limit his ability to move and to move for sustained periods of time.  The numbness in his legs indicates possible nerve root damage and also limits his ability to move effectively and causes unpredictable loss of balance.  He has arthritis in his hips, ankles, and knees.  He agrees that he can lift ten pounds, but he contends that he cannot sustain this activity throughout a full work day.  He may be able to sit for six hours, but it is very uncomfortable.  He is also slow to recover from such exertions and is unable to move effectively the day or several days following such exertions.  He notes that the ALJ based his credibility assessment on Plaintiff's daily activities and states that, although he makes every effort to maintain his household and engage in some community contributions, his ability to do this comes with great discomfort and pain.  Although he has attended school part-time, he is not currently enrolled due to the emotional stress of being denied benefits.  He is now clinically depressed.  Plaintiff also states that his experience with applying for jobs has been that, once employers discover the nature of his back injuries, they refuse to hire Plaintiff.  Plaintiff also states that it appears that the SSA has used his efforts to get a job or to become qualified for better employment as a reason to suggest he is not injured to the extent claimed.

### A.  Waiver of Counsel

Plaintiff first argues that the ALJ failed to obtain a valid waiver of counsel.  Specifically, he contends that (1) the ALJ "deceptively advised the claimant . . . that a representative is not a lawyer and asked the claimant if he wanted to proceed without first explaining the representative could be a lawyer" (#22, p. 1); (2) Plaintiff had to ask the ALJ if the ALJ's enumeration of rights

meant acquiring a lawyer; (3) the ALJ did not explain the advantages of obtaining a lawyer; (4) the ALJ deceptively represented that a representative would perform the same functions that the ALJ is capable of doing; (5) the ALJ failed to inform Plaintiff that a trained lawyer could ask better questions at a hearing than Plaintiff could; (6) the ALJ failed to inform Plaintiff that the VE would be a hostile witness and presented the VE as an objective witness, thus undermining Plaintiff's ability to assess whether he needed a lawyer; (7) the ALJ failed to inform Plaintiff that no new evidence could be admitted on appeal; (8) Plaintiff felt pressured to go ahead without a representative and the ALJ did not allow him to complete a sentence after asking him if he wanted to proceed; (9) the VE saw that Plaintiff needed an attorney; and (10) Plaintiff's emotional state prevented him from organizing his testimony and the ALJ allowed Plaintiff to raise irrelevant issues that contaminated the record.

A claimant has a statutory right to counsel at a disability hearing. 42 U.S.C. § 406; 20 C.F.R. § 404.1700. If properly informed of the right, the claimant may waive it. *Thompson v. Sullivan,* 933 F.2d 581, 584 (7th Cir. 1991). The *Thompson* decision established the requirements for a valid waiver, stating as follows:

> Information that will ensure a valid waiver of counsel includes an explanation of the manner in which an attorney can aid in the proceedings, the possibility of free counsel or a contingency arrangement, and the limitation on attorneys' fees to twenty-five percent of past-due benefits plus required court approval of the fees.

*Id*. In *Thompson*, the ALJ briefly questioned Thompson at the hearing regarding whether he was aware of his right to have a lawyer and whether he had given up that right. Thompson later argued that the SSA failed to advise him of the 25 percent limitation on fees and the court agreed. Notwithstanding the fact that Thompson had received written information regarding the other two elements of a valid waiver, the court stated as follows:

> The dialogue regarding counsel also evidences the ALJ's failure to fully discuss the benefits of legal representation or the possibility of contingency arrangements. As noted by the court in *Hawwat,* "[t]he information regarding the cost of any attorney is particularly relevant in disability cases where shortage of funds is likely to be an issue for the claimants." *Hawwat [v. Heckler]*, 608 F. Supp. [106]

>at 109 [(N.D. Ill. 1984)]. The ALJ should have made an effort to cover these important matters concerning representation by an attorney.

*Id.* at 585. Based on the ALJ's failure to adequately explain the three elements, the court concluded that Thompson had not knowingly and intelligently waived his right to counsel. *Id.*

In *Binion v. Shalala*, the Seventh Circuit court reiterated that the obligation to inform a claimant of her rights regarding representation devolves on the ALJ. The court stated as follows: "To ensure a valid waiver of counsel, *we require the ALJ to explain* to the *pro se* claimant (1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees." *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994) (emphasis added) (citing *Thompson*, 933 F.2d at 584). Some courts have indicated that the written materials sent to the claimant may provide enough information to show a valid waiver if the ALJ establishes at the hearing that the claimant received, read, and understood the notices. *See, e.g., Seamon v. Barnhart*, No. 05-C-13-C, 2005 WL 1801406, *9-10 (W.D. Wis. July 29, 2005) (unreported). In the instant case, the ALJ did not ask Plaintiff whether he had received the information on representation. Moreover, the Seventh Circuit court indicated in *Binion* that the ALJ has an obligation to explain the claimant's rights that apparently is independent of the Commissioner's obligation to provide written information regarding representation.

Based on this case law, the Seventh Circuit has made it clear that the ALJ must explain to *pro se* claimants all three elements before a waiver of counsel can be valid. Here, the ALJ mentioned some of the benefits of having an attorney, but he did not discuss all of them.[2] He also told Plaintiff about the possibility of free counsel, but he did not mention the 25 percent

---

[2]The Social Security publication titled "Your Right to Representation" lists five ways a representative can help a claimant, as follows: (1) get information from the claimant's Social Security file; (2) held the claimant get medical records or information to support his claim; (3) accompany the claimant or represent the claimant at any interview, conference, or hearing with the SSA; (4) request reconsideration, hearing, or Appeals Council review; and (5) help the claimant witnesses prepare for a hearing and question any witnesses. (R. 48.)

limitation on attorney fees.  Accordingly, the Court concludes that Plaintiff's waiver of counsel was invalid.

### B. Whether the ALJ Adequately Developed the Record

When a claimant's waiver of counsel is invalid, this fact alone is not automatic cause for reversing the ALJ's decision.  *Binion,* 13 F.3d at 245.  The ALJ has a heightened responsibility to an unrepresented claimant regardless of the validity of a waiver of counsel.  *Id.* ("the ALJ has the same duty to develop the record when a plaintiff is without counsel regardless of whether the plaintiff's waiver of counsel was valid").  The significance of an invalid waiver is that the burden shifts to the Commissioner to show that the ALJ adequately developed the record.  *Id.*  To do this, the Commissioner must prove that the ALJ "'scrupulously and conscientiously probe[d] into, inquire[d] of and explore[d] . . . all of the relevant facts'."  *Id*. (citing *Gold v. Sec'y of HEW*, 463 F.2d 38, 43 (2d Cir. 1972)).  Courts generally respect the ALJ's "reasoned judgment" regarding how much evidence is needed to make a finding about disability.  *Luna v. Shalala,* 22 F.3d 687, 692 (7th Cir. 1994).  "Moreover, a significant omission is usually required before this court will find that the Secretary failed to assist *pro se* claimants in developing the record fully and fairly."  *Luna,* 22 F.3d at 692.  If the Commissioner establishes that the ALJ fully and fairly developed the record, the plaintiff then has an opportunity to rebut this showing by demonstrating prejudice, by proving that the ALJ did not elicit all of the relevant information from the claimant, or by demonstrating an evidentiary gap.  *Binion*, 13 F.3d at 245.

Here, the Commissioner did not discuss in his brief whether the ALJ fully and fairly developed the record.  As a result, he did not carry his burden on this issue and the Court recommends remanding this case on that basis.  In the absence of any briefing on whether the ALJ adequately developed the record, the Court has briefly reviewed the record and makes the following observations:

The ALJ stated that Plaintiff had a severe combination of impairments including degenerative disc disease, diabetes, migraine headaches, and hypertension. (R. 16.) At the hearing, the ALJ questioned Plaintiff about (1) his general background (R. 414) including his schooling (R. 416) and ability to read and write; (2) whether he could drive and how long he could sit or stand (R. 415, 422); (3) his daily activities (R. 424); (4) his medications (R. 423); and (5) his pain (R. 423). The ALJ also allowed Plaintiff to raise some other issues that concerned Plaintiff, including his search for jobs (R. 418), his family history and his willingness to work and to take care of his family (R. 431), how he got hurt (R. 432), and his frustration with the SSA and with Dr. Patel's examination (R. 447, 453).

Nevertheless, at the hearing, the ALJ made no inquiry in several areas and his questioning was "less than searching" in other areas. *See Harris v. Barnhart*, 219 F. Supp. 2d 966, 974 (E.D. Wis. 2002). In his decision, the ALJ stated that Plaintiff has diabetes that is currently controlled by medication and Plaintiff reported daily headaches. However, the ALJ did not ask Plaintiff specifically about the effects of any of his four impairments, other than asking if the pain from his back goes down his legs. (R. 423.) Regarding medications, Plaintiff testified, "I take stuff for my migraines, but I don't take any pain medicine." (R. 423.) He explained that he had a bad experience with Valium and since that time, he avoids pain medication because he does not want to become addicted. The ALJ did not ask any more questions about his medication or any side effects, even though the record indicates that he takes medication for diabetes, hypertension, and arthritis, including several prescription medications. (R. 258, 276 (March 2006 medication list), 282.) *See Moore v. Apfel*, No. 98-C-5448, 1999 WL 261927, *1-2 (N.D. Ill. April 26, 1999) (unreported) (remanding case where the ALJ failed to fully explore side effects of medication and effects of the claimant's conditions).

The ALJ also did not obtain clear and detailed testimony in the area of whether Plaintiff has the ability to "perform sustained work activities in an ordinary work setting . . . 8 hours a day, for 5 days a week." *See* SSR 96-8p. "Such clarification is essential to the determination of whether plaintiff retains the RFC to work." *Harris*, 219 F. Supp. 2d at 976. As in *Harris*, the Court finds this troubling because the ALJ in this case relied in part on evidence of Plaintiff's

daily activities to find that his statements regarding the intensity, persistence, and limiting effects of his symptoms were not credible.

In addition, the ALJ did not contact Dr. Pauluska about his April 2006 opinion which stated that Plaintiff had "a long term chronic permanent disabling condition affecting his back which interferes with his ability to fully participate in work" and "chronic degenerative changes of his knees, ankles, and hips." (R. 261.) Specifically, the doctor opined that Plaintiff could not do a job that required "prolonged sitting, standing, lifting, carrying, or rotation of his lower back." (R. 261.) This is significant because the Commissioner argued that Dr. Paluska's April 2006 opinion is not binding because Dr. Paluska did not explain what had changed in Miller's condition to cause the doctor to change his opinion from no work restrictions in October 2005 to severe restrictions in April 2006. If the ALJ did not give controlling weight to Dr. Paluska's opinion regarding Plaintiff's limitations because the doctor did not explain the change from his October 2005 clinic notes, the ALJ could have recontacted the doctor for clarification. In *Harris*, the district court remanded a case for failure to adequately develop the record when the treating doctor's letter offered no explanation of the basis for his opinion and the ALJ rejected the opinion, in part, for that reason. *Harris*, 219 F. Supp. 2d at 976 (citing 20 C.F.R. § 404.1512(e)(1) which states that the agency must recontact a treating source when his opinion "contains a conflict or ambiguity that must be resolved, . . . does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques").

As the Court stated above, the Commissioner failed to meet his burden on the issue of whether the ALJ adequately developed the record and, as a result, the Court recommends remanding this case for further consideration. The Commissioner will have an opportunity to address this issue in an objection to this Report and Recommendation. In response to any objection, Plaintiff may then try to rebut this showing by demonstrating prejudice, proving that

the ALJ did not elicit all of the relevant information from the claimant, or demonstrating an evidentiary gap. *Binion*, 13 F.3d at 245.

### C.  Plaintiff's Other Arguments

Plaintiff also argues that the ALJ erred because (1) the RFC was inconsistent with Dr. Paluska's opinion; and (2) there are insufficient hand material mover jobs in this region. The Court addressed Dr. Paluska's opinion above.

Regarding Plaintiff's contention that there are insufficient hand material mover jobs in this region, Plaintiff contends that the ALJ erred because (1) the ALJ stated that applicants are not required to list back injuries on an employment application, reflecting the ALJ's bias; (2) the record fails to show that the relevant jobs are "not even listed on the Illinois Job Search listings at the Illinois Unemployment office . . . in Champaign, IL" (#22, p. 3); and (3) the job description for this job is unrealistic.

To the extent that Plaintiff is challenging the accuracy of the VE's testimony, the Court notes that the ALJ is entitled to rely on expert testimony unless that testimony is challenged at the hearing. *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) (stating that when no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion, even if that conclusion differs from authorities such as the Dictionary of Occupational Titles (hereinafter "DOT")); *Powers v. Apfel*, 207 F.3d 431, 436-37 (7th Cir. 2000) (citing *Young v. Sec'y of Health and Human Servs.*, 957 F.2d 386, 391-92 (7th Cir. 1992)). If someone questions the basis of the VE's conclusions at the hearing, however, then the ALJ should inquire to find out whether the purported expert's conclusions are reliable. *Id.* Social Security Ruling 00-4p requires the ALJ to explain in his decision how he has resolved any conflict with the DOT "that has been identified." SSR 00-4p. "The ruling requires an explanation only if the discrepancy was "identified"--that is, if the claimant (or the ALJ on his behalf) noticed the conflict and asked for substantiation. Raising a discrepancy only after the hearing . . . is too late." *Donohue*, 279 F.3d at 446-47. Plaintiff's argument regarding the job description directly challenges the VE's testimony as it relates to the DOT. Here, as in

*Donahue*, based on the record as it stands--that is, with no questions asked that reveal any shortcomings in the vocational expert's data or reasoning--the ALJ was entitled to rely on the VE's testimony regarding hand material mover jobs. *Id*. at 447.  Plaintiff's argument regarding the availability of jobs in Illinois is not based on a discrepancy between the VE's testimony and the DOT, but the same reasoning applies and the ALJ was entitled to rely on the VE's testimony. Therefore, Plaintiff's challenges to the VE's testimony do not constitute a basis for remand.

## IV.  Summary

For the reasons set forth above, this Court recommends that Plaintiff's motion for summary judgment **(#17)** be **GRANTED** and further recommends remanding this case pursuant to sentence 4 of 42 U.S.C. § 405(g)[3] for further consideration consistent with this Report and Recommendation.  The parties are advised that any objection to this recommendation must be filed in writing with the clerk within ten working days after being served with a copy of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1).  Failure to object will constitute waiver of objection on appeal.  *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 25th day of August, 2008.

s/ DAVID G. BERNTHAL
U.S. MAGISTRATE JUDGE

---

[3]Under 42 U.S.C. § 405(g), sentence four, "[t]he court shall have the power to enter, upon pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."